# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 12, 2026                    Decided July 24, 2026

No. 25-1092

AMERICAN WHITEWATER,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

---

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

---

*Haley Nicholson* argued the cause for petitioner. With her on the briefs were *Robert A. Nasdor* and *Kevin Cassidy*.

*J. Houston Shaner*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *James T. Dawson*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: MILLETT and PAN, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

Opinion concurring in part and dissenting in part by *Circuit Judge* PAN.

ROGERS, *Senior Circuit Judge*: American Whitewater petitions for review of the orders of the Federal Energy Regulatory Commission denying its motion to intervene out of time in a license surrender proceeding pursuant to 18 C.F.R. § 385.214(b)(3) ("Rule 214"), and its request for rehearing. Petitioner contends that the Commission's action was arbitrary and capricious for two reasons: First, the Commission erred by conflating the Rule's good cause provisions because Petitioner's motion satisfied the requirements of the Rule, which by its plain terms only requires a late intervenor to establish good cause for why the time limitation on filing should be waived under subsection (b)(3), and not good cause for filing late under subsection (d)(1)(i). Petitioner's Br. 7–8. Second, the Commission compounded the error in denying rehearing by failing to reconcile its decision with its precedent on late intervention. *Id*. at 8.

For the following reasons, the court concludes that Petitioner fails to show that the Commission erred by interpreting Rule 214 to require more than administrative oversight under subsection (d)(1)(i) to show good cause under subsection (b)(3), and absent that mandatory requirement, the Commission had discretion whether to consider other factors under subsection (d)(1). But Petitioner has shown that the Commission acted arbitrarily and capriciously in denying rehearing by inconsistently applying its precedent on late intervention without a reasoned explanation, contrary to a fundamental principle of administrative law that agencies must treat similarly situated parties similarly. Accordingly, the court vacates the orders and remands the case to the Commission. The Commission retains jurisdiction, notwithstanding the conditional approval of surrender of license and decommissioning leaving the dam in place, to reconsider petitioner's motion to intervene and provide a reasoned explanation for its determination consistent with its precedent.

**I.**

Petitioner is a national non-profit river conservation and recreation organization whose members include whitewater paddlers of kayaks and canoes, many of whom live or engage in recreational boating in Missouri. It recently intervened in a license surrender proceeding of a hydroelectric project on a river between Maine and New Hampshire, urging that two dams be removed to restore whitewater boating and related recreational activities. *Am. Whitewater v. FERC*, 125 F.4th 1139, 1145, 1153 (D.C. Cir. 2025). Here, too, Petitioner sought to intervene, filing a motion for intervention out of time in the license surrender proceeding for the Niangua Hydroelectric Project in Missouri that was proceeding without requiring removal of a dam. The Niangua Project was completed in 1930, impounded the Niangua River, creating Lake Niangua, and had been operated by the Missouri Electric Power Company before it was acquired by the Sho-Me Power Electric Cooperative in the mid-twentieth century.

In 1994, the Commission approved Sho-Me's application for relicensing of the Niangua Project for a term of thirty years, to June 1, 2024. As the end of the license term neared, on May 30, 2019, Sho-Me filed a Notice of Intent to file an application for a new forty-year license. Sho-Me conducted various technical studies of the Niangua Project, including studies for water quality, lake floor mapping, and cultural resources. After consulting the stakeholders, however, Sho-Me determined that the Project's "contribution to their core business commitment of providing safe, reliable, and low-cost power to rural Missourians did not justify relicensing." License Surrender Application, Ex. A at A-10. On December 3, 2021, Sho-Me filed a request to withdraw its Notice of Intent. The Commission received no applications from other licensees to operate the Niangua Project, *see* 18 C.F.R. § 16.25(a), and on May 17, 2022, requested Sho-Me to file a plan and schedule for a formal license surrender application. On July 15, 2022,

Sho-Me filed a plan and schedule for the license surrender application.

On June 29, 2023, Sho-Me filed an application for surrender of its license, proposing to decommission the project and leave the dam and surrounding power structures in place to maintain the impoundment level of Lake Niangua. The application stated that the proposal "balances various interests," acknowledging the preference of various federal and state resource agencies for dam removal and river restoration, and "a strong preference" of "the local community surrounding the Niangua Project . . . for maintaining Lake Niangua and keeping the dam in place" because of aesthetic and recreational interests. License Surrender Application, Ex. A at A-11. As a next step, on July 6, 2023, Sho-Me provided notice of its application to landowners near the Project by certified mail, with a deadline for filing comments, motions to intervene, and protests by August 31, 2023. Notice of Sho-Me's license surrender application was placed on the Commission's website on August 1, 2023, and in the Federal Register six days later, 88 Fed. Reg. 52,153 (Aug. 7, 2023). Under the Commission's regulations, "[o]nly . . . filings made within the time prescribed in the notice will be considered timely." 18 C.F.R. § 385.210(b).

On March 28, 2024, the Commission published a Notice of Intent to prepare an Environmental Assessment ("EA") for Sho-Me's application for license surrender pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA"). *See* 89 Fed. Reg. 21,510 (Mar. 28, 2024). The Notice invited federal, state, local, and Tribal agencies affected by the proposal to cooperate in the preparation of the EA planned to be issued in July 2024. *Id.* at 21,510–11. The EA was to be "made available for review by all interested parties" and "comments filed on the EA will be reviewed by staff and considered in the Commission's final decision on the proceeding." *Id.* at 21,510. The schedule called for completion

of the EA on September 30, 2024.  *Id.*  The Commission set a comment deadline of August 29, 2024, and later extended it to September 30, 2024.

Petitioner filed a motion to intervene out of time in the license surrender proceeding on May 28, 2024, pursuant to Rule 214(b)(3).  The motion identified Petitioner and its mission to protect and restore the Nation's whitewater resources and stated its members included kayakers and canoers in Missouri; many of whom would be directly affected by the outcome of the license surrender proceedings.  Mot. to Intervene at 1.  The motion described the dependent relationship between the dam and Lake Niangua, "a shallow impoundment with limited recreational use," and the "quiet stretches" for ample boating activities on 125 miles of Niangua River.  *Id.* at 2.  Pointing to the Commission's use of a "broad 'public interest'" standard in assessing hydropower surrender applications, the motion argued that Petitioner's "participation in this proceeding will ensure that the interests of the public are represented," *id.* (citing 16 U.S.C. § 799).  Further, the motion explained: (1) "The organization only recently became aware of this proceeding and was unaware that the deadline for intervention had passed," (2) "No party to this proceeding will be prejudiced by granting late intervention," (3) "[N]or will granting [Petitioner's] Motion to Intervene Out of Time delay this proceeding," and (4) "No other party to this proceeding can adequately represent [Petitioner's] interest in this proceeding as the organization's primary focus is on recreational boating." *Id.* at 3.

The EA issued on July 30, 2024, shortly after Sho-Me's 30-year license expired on June 1 and the Project began operating under annual licenses.  It considered full removal and staged partial removal of the Project's dam as alternative actions, ultimately recommending approval of the application for license surrender with the dam, power tunnel, and powerhouse left in place.  The EA listed Petitioner, Ameren

Missouri (an electric utility company), and several state and federal resource and conservation agencies as having filed notices of intervention or motions to intervene. On September 30, 2024, Petitioner and Great Rivers Environmental Law Center filed comments on the EA stating, as relevant, the EA was arbitrary and capricious and violated NEPA and other statutes because it ignored "foreseeable cumulative effects" and "relied on speculative conclusions based on incomplete data" in recommending surrender of license without dam removal. EA Comments at 15.

Over a year later, while this appeal was pending, the Commission approved the surrender of Sho-Me's license with the dam in place, subject to terms and conditions and having considered and rejected the arguments in Petitioner's comments. Order Approving Surrender of License, Sho-Me Power Electric Cooperative, 193 F.E.R.C. ¶ 61,216 (Dec. 18, 2025) ("Surrender Order").

Previously, over a year before, the Commission denied, on October 15, 2024, Petitioner's unopposed motion to intervene out of time because it "failed to demonstrate good cause for its inability to intervene in a timely manner." Notice Denying Late Intervention at 1 (Oct. 15, 2014) ("Motion Order"). Petitioner sought rehearing of the Commission's denial, and on December 13, 2024, the Commission denied Petitioner's request by operation of law, 16 U.S.C. § 825*l*(a), subject to a further order ("Denial Order"). On January 16, 2025, the Commission addressed Petitioner's arguments, reaching the same result while "modifying the discussion" in the Motion Order. 190 F.E.R.C. ¶ 61,028, at P 2 (2025) ("Rehearing Order").

In denying rehearing, the Commission stated that "[u]nder the Commission's regulations, a movant seeking late intervention must establish that there is good cause for its late filing," namely, "any explanation by the movant of why it was unable to intervene in a timely manner." *Id.* at P 8–9 & nn.16–

19 (citing 18 C.F.R. § 385.214(b)(3), (d)(1)(i); *Broadview Solar LLC*, 174 F.E.R.C. ¶ 61,199, at P 16 (2021); *Double E Pipeline, LLC*, 173 F.E.R.C. ¶ 61,074, at P 18 (2020)). Petitioner had failed to establish good cause because under Commission precedent a "[l]ack of awareness of a publicly-noticed proceeding, without more, does not constitute good cause." *Id.* at P 10 & n.25 (citing *Dakota Nat. Gas, LLC*, Notice Denying Late Interventions, Dkt. No. CP18-511-000 (Oct. 30, 2018)). Rejecting Petitioner's argument that "even if it failed to demonstrate good cause, other factors under Rule 214(d) weigh in favor of granting its motion," the Commission stated that "failure to establish good cause is a sufficient condition to deny intervention and no other factors need be examined where good cause does not exist." *Id.* at P 11 & n.27 (citing *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074, at P 23; *Power Co. of Am. v. FERC*, 245 F.3d 839, 843 (D.C. Cir. 2001); *Cal. Trout v. FERC*, 572 F.3d 1003, 1023 (9th Cir. 2009)). The Commission acknowledged that although it "has granted petitions for late intervention with differing rationale, in each instance it has weighed the requirements of Rule 214 only after focusing on whether good cause has been shown for the late filing." *Id*. at P 13 & n.36 (citing *Venture Glob. CP2 LNG, LLC*, 189 F.E.R.C. ¶ 61,148, at P 13 (2024); *STS Hydropower, LLC*, Notice Denying Late Intervention, Project No. P-7242-060 (Oct. 16, 2024); *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074, at PP 17–23)). The Commission added: "In each case, the Commission makes a fact-specific determination." *Id.* at P 13 & n.37 (citing *Woodland Pulp, LLC*, Notice Granting Late Intervention, Project No. P-2660-038 (Aug. 22, 2024) (unreported)).

Petitioner seeks review of the Motion Order, Denial Order, and Rehearing Order pursuant to 16 U.S.C. § 825*l*(b).

## II.

The Federal Power Act authorizes the Commission to regulate the licensing of hydropower projects on "navigable

waters of the United States." 16 U.S.C. § 817(1). Once granted, a license may be "surrendered only upon mutual agreement between the licensee and the Commission." *Id.* § 799; *see* 18 C.F.R. § 6.2. To initiate surrender, a licensee must file an application stating the reasons for surrender, 18 C.F.R. § 6.1, and the Commission may condition surrender of the license, including with respect to decommissioning any project works that have been built, *id.* § 6.2. Under Commission policy, decommissioning can range from "simply shutting down the power operations" to "tearing out all parts of the project, including the dam, and restoring the site to its pre-project condition." *Project Decommissioning at Relicensing; Policy Statement*, 60 Fed. Reg. 339, 340 (Jan. 4, 1995) ("Decommissioning Policy"). Once a project is "no longer licensed," and the Commission considers its jurisdiction over the project to end, "future operation of any remaining works is then the responsibility of whoever next assumes regulatory authority," typically, the State in which the project is located. *Id.* at 346.

On review, Petitioner presents textual and procedural challenges to the Commission's orders on intervention in the Niangua Project license surrender proceedings. Petitioner contends, first, the denial of its motion to intervene was arbitrary and capricious because it was based on a misinterpretation of the plain text of Rule 214, contrary to the regulatory history, and insufficiently explained, Petitioner's Br. 8, 18, and second, in denying rehearing the Commission compounded its error by "grossly inconsistent and fluctuating interpretations of Rule 214," *id.* at 8; *see id.* at 11, 20. Petitioner presents no separate argument regarding the Denial Order.

The court's review of these challenges under the Administrative Procedure Act is limited. The court is to determine whether the Commission's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." *Am. Whitewater*, 125 F.4th at 1150 (quoting 5 U.S.C. § 706(2)(A)). A decision to deny a motion to intervene is neither arbitrary nor capricious so long as it is "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). And the Commission "enjoys broad discretion" when managing its own docket. *Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 230 (1991). Additionally, when the Commission applies procedural Rule 214(d)(1), the court inquires only whether "the Commission abused its discretion," *i.e.*, "whether the [Commission's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *City of Orrville v. FERC*, 147 F.3d 979, 991 (D.C. Cir. 1998) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). The Commission, however, "cannot depart from [its] rulings without 'provid[ing] a reasoned analysis indicating that prior policies and standards are being deliberately changed.'" *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 17 (D.C. Cir. 2014) (second alteration in original) (quoting *Alcoa Inc. v. FERC*, 564 F.3d 1342, 1347 (D.C. Cir. 2009)).

## A.

A threshold question concerns the court's jurisdiction now that the Commission has issued the Surrender Order granting Sho-Me's application for license surrender and decommissioning. The court, in accord with "an independent duty to assure [itself] that the petitioners and their claims satisfy the requirements of Article III" of the Constitution, *TikTok Inc. v. Garland*, 122 F.4th 930, 947 (D.C. Cir. 2024) (citing *Exelon Corp. v. FERC*, 911 F.3d 1236, 1240 (D.C. Cir. 2018)), considers whether Petitioner has standing to bring its case and whether the case is moot.

To establish standing, a petitioner must show that (i) it "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) the "injury was likely caused by the

defendant"; and (iii) the injury "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)). The declarations filed by Petitioner's members state that they would engage in recreational activities on the Niangua River if the dam was removed from the Project area. *See, e.g.*, *Decl. of Laura Sievert* ¶¶ 19–24; *Decl. of Casey Tortorige* ¶ 18. Petitioner's inability to intervene in the license surrender proceedings to seek removal of the dam is an injury in fact caused by the challenged orders that would be redressable by an opinion from the court instructing the Commission to reconsider the intervention motion. *See City of Orrville,* 147 F.3d at 990 n.12; *Beyond Nuclear, Inc. v. Nuclear Regul. Comm'n*, 113 F.4th 956, 962–63 (D.C. Cir. 2024), *cert. denied sub nom. Beyond Nuclear, Inc. v. NRC*, 223 L. Ed. 2d 513 (Jan. 12, 2026). Further, Petitioner satisfies the requirements of associational standing: (1) its members would have standing to sue in their own right, (2) the interest Petitioner seeks to protect are "germane to [its] purpose" as a nonprofit organization advocating for river conservation and recreation, and (3) individualized participation is not necessary for the challenge to denial of intervention or for the court to provide relief. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

This case also is not moot even though the Commission has approved Sho-Me's application to surrender the Project license with the dam in place. A case is moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). The Commission typically loses jurisdiction over a project once the party surrendering its license completes the decommissioning in compliance with the Surrender Order. *See Am. Whitewater*, 125 F.4th at 1147, 1152; Decommissioning Policy at 346. Here, the Surrender Order states that the license continues in effect "until the

Commission's Division of Dam Safety and Inspections – Chicago Regional Engineer has issued a letter stating that the project facilities have been decommissioned in accordance with this surrender order." Surrender Order at P 66(E). According to the Commission's docket, that letter had not yet issued as of the date of this opinion. *See* Sho-Me Power Elec. Cooperative, Fed. Energy Reg. Comm'n Dkt. No. P-2561-000. Nor have the parties advised the court otherwise. The Commission, therefore, has jurisdiction to grant the relief sought: to reconsider the denial of Petitioner's motion to intervene out of time. *See Pub. Serv. Comm'n of State of N.Y. v. Fed. Power Comm'n*, 284 F.2d 200, 205–206 (D.C. Cir. 1960); *cf. Am. Whitewater*, 125 F.4th at 1152. Were intervention granted, then Petitioner could move for reopening or reconsideration of the Surrender Order. *See Fla. Gas Transmission Co.*, 100 F.E.R.C. ¶ 61,282, at 62,225 (2002); *cf. Pub. Serv. Comm'n*, 284 F.2d at 205–206.

**B.**

Turning to Petitioner's challenges to the Commission's denial of its motion to intervene out of time, Petitioner contends that the Commission misinterpreted the plain text of Rule 214(b)(3), acted contrary to its regulatory history, and insufficiently explained its interpretation. Petitioner's Br. 18. This contention is unpersuasive.

Section 313(b) of the Federal Power Act provides that only "part[ies]" to Commission proceedings may seek administrative or judicial review of the Commission's final orders. 16 U.S.C. § 825*l*(b). Pursuant to its rulemaking authority, *id.* § 825g(a), the Commission promulgated Rule 214 on intervention, *see* 47 Fed. Reg. 19,014 (May 3, 1982), whereby anyone (with the exception of certain governmental and tribal entities) seeking to become a party "must file a motion to intervene." 18 C.F.R. § 385.214(a)(3).

Rule 214 establishes different requirements for timely and untimely motions to intervene. A timely motion must state "the position taken by the movant and the basis in fact and law for that position," *id*. § 385.214(b)(1), and demonstrate sufficient facts showing that the movant either has a statutory or regulatory right to participate, "represents an interest which may be directly affected by the outcome of the proceeding," or that its participation would be "in the public interest." *Id.* § 385.214(b)(2). An untimely motion must additionally show "good cause why the time limitation should be waived." *Id.* § 385.214(b)(3). A movant filing a timely unopposed motion to intervene automatically becomes a party fifteen days after the motion is filed. *Id.* § 385.214(c)(1). An opposed or untimely motion to intervene must be approved by the Commission. *Id.* § 385.214(c)(2). Subsection (d) provides:

> (1) In acting on any motion to intervene filed after the period prescribed under Rule 210, the decisional authority *may* consider whether:
>
> (i) The movant had good cause for failing to file the motion within the time prescribed;
>
> (ii) Any disruption of the proceeding might result from permitting intervention;
>
> (iii) The movant's interest is not adequately represented by other parties in the proceeding;
>
> (iv) Any prejudice to, or additional burdens upon, the existing parties might result from permitting the intervention; and
>
> (v) The motion conforms to the requirements of paragraph (b) of this section.

*Id.* § 385.214(d) (emphasis added).

The Commission concluded that Petitioner did not establish good cause under Rule 214(b)(3) because its motion to intervene merely stated that Petitioner "recently became aware of the proceeding and was unaware the deadline to intervene had passed" and "administrative oversight" was "not persuasive." Motion Order at 1. On rehearing, the Commission elaborated, additionally stating that "[t]o determine whether a late intervenor established good cause [under Rule 214(b)(3)], the Commission considers any explanation by the movant of why it was unable to intervene in a timely manner [under Rule 214(d)(1)(i)]." Rehearing Order at P 9 & n.19 (citing *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074, at P 18); *see id.* at P 8 & n.16 (citing 18 C.F.R. § 385.214(b)(3), (d)(1)). Because "[l]ack of awareness of a publicly-noticed proceeding, without more, does not constitute good cause," the Commission denied the motion. *Id.* at P 10 & n.25 (citing *Dakota Nat. Gas, LLC*, Notice Denying Late Interventions, Dkt. No. CP18-511-000 (Oct. 30, 2018)).

Petitioner's plain text challenge stands or falls on whether the Commission "conflated" the mandatory good-cause requirement under subsection (b)(3) with the discretionary good-cause factor under subsection (d)(1)(i) by deeming the latter mandatory. Petitioner's Br. 16. In Petitioner's view, the "plain text" of Rule 214 did "not require[] [it] to show good cause for failing to file within the time prescribed [under subsection (d)(1)(i)]," but only "good cause for why the time limitation should be waived [under subsection (b)(3)]." *Id.* at 17. Petitioner thus contends that the Commission erred by deeming the failure to satisfy subsection (d)(1)(i) fatal to its intervention motion. *Id.* at 15–17.

This interpretation overlooks the relationship between the subsections (b)(3) and (d)(1) of Rule 214. *See* Respondent's Br. 26. Petitioner acknowledges that subsection (b)(3) requires a movant to establish "good cause why the time limitation should be waived," and is thereby mandatory. Petitioner's Br.

18. It does not follow, however, that a movant can disregard any of the (d)(1) factors at will. Good cause is not defined in the Rule, and subsection (d) provides notice that in acting on an untimely motion, "the decisional authority *may* consider" any of the five listed factors, including good cause for failing to file within the prescribed time, 18 C.F.R. § 385.214(d)(1)(i) (emphasis added). *See* Rehearing Order at P 11 n.29 (citing *Tenn. Gas Pipeline Co.*, 162 F.E.R.C. ¶ 61,167, at P 50 (2018)). "The word 'may' customarily connotes discretion," *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 346 (2005), and this court has held that "the text of 18 C.F.R. § 385.214(d)(1) does not compel consideration of each of the factors." *City of Orrville*, 147 F.3d at 991 (citing *Citizens to Pres. Overton Park*, 401 U.S. at 416). The plain text of the Rule does not bar the Commission from relying solely on the first (d)(1)(i) factor – "good cause for failing to file the motion within the time prescribed" – to the exclusion of the rest to determine whether a movant "show[ed] good cause why the time limitation should be waived" under subsection (b)(3). 18 C.F.R. § 385.214(b)(3), (d)(1)(i); *see City of Orrville*, 147 F.3d at 991; *Cal. Trout v. FERC*, 572 F.3d 1003, 1014–1015 (9th Cir. 2009); *cf. Power Co. of Am.*, 245 F.3d at 843.

The Commission's interpretation does not make the two good cause provisions "superfluous," as Petitioner maintains. Petitioner's Br. 17. The subsections serve different purposes. Subsection (b)(3) requires a movant to establish good cause why the filing time limitation should be waived. Subsection (d)(1) specifies the factors that the Commission may, but is not required to, rely on in evaluating whether the movant established good cause under subsection (b)(3), including whether the movant provided a persuasive explanation of why it missed the deadline in the first place under factor (d)(1)(i).

Further, contrary to Petitioner's view, the regulatory history of Rule 214 is consistent with the Commission's interpretation. Petitioner's Br. 17–18. The regulatory history

merely states that "Rule 214(d) sets forth . . . general criteria to be applied by the decisional authority in exercising *discretion* to grant late intervention." 47 Fed. Reg. at 19018 (emphasis added). Nothing in the text or regulatory history of Rule 214 requires the Commission to consider any or all of the (d)(1) factors in assessing "good cause." Nor, as Petitioner suggests, is *Swanson Mining Corp. v. FERC*, 790 F.2d 96 (D.C. Cir. 1986), to the contrary. Petitioner's Br. 22–23. There, the court upheld the Commission's reliance on the other (d)(1) factors to find good cause to grant intervention but did not hold that the Commission was required to consider these factors. *Swanson*, 790 F.2d at 105.

As is clear, Petitioner is incorrect that the Commission failed "to cite prior orders that deny late intervention based on a failure to prove good cause under Rule 214(d)(1)(i)." Petitioner's Br. 18. In the Rehearing Order, the Commission relied on *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074 (2020), explaining that "[t]o determine whether a late intervenor established good cause, the Commission considers whether the movant explains why it was unable to intervene in a timely manner" – a factor under Rule 214(d)(1)(i). Rehearing Order at P 9 & n.19 (quoting *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074, at P 18). As here, because the intervenors in *Double E Pipeline* failed to provide justification for their late filing, the Commission concluded they failed to demonstrate "that good cause existed to justify waiving the time limitation for interventions" under Rule 214(b)(3) without considering "the other factors in Rule 214(d)." 173 F.E.R.C. ¶ 61,074, at P 25.

Petitioner fails, therefore, to show that the Commission arbitrarily and capriciously interpreted Rule 214 in denying Petitioner's motion to intervene.

## C.

But Petitioner also contends that the Commission was arbitrary and capricious when it applied "inconsistent and

fluctuating interpretation of Rule 214" in denying Petitioner's request for rehearing of the denial of the motion to intervene out of time. Petitioner's Br. 15. Petitioner is correct.

The Commission concluded on rehearing that Petitioner "failed to demonstrate that good cause exists to grant its motion to intervene out of time" because administrative oversight is insufficient to establish good cause, and "failure to establish good cause is a sufficient condition to deny intervention and no other factors need be examined." Rehearing Order at PP 6, 10–11. The Commission added: "Although [it] has relied on differing rationales to grant late intervention petitions, in each instance the Commission has weighed the requirements of Rule 214 *only after focusing on whether good cause has been shown for the late filing*." *Id.* at P 13 (emphasis added). In so concluding, the Commission relied on *Tennessee Gas, LLC*, 162 F.E.R.C. ¶ 61,167 (2018), where it announced that "going forward" it would be "less lenient in the grant of late interventions" due to a "pattern" of "failures" by movants to address Rule 214's requirements, *id.* at PP 49–51; *see* Rehearing Order at 11 & n.27.

In *Double E Pipeline, LLC*, 173 F.E.R.C. ¶ 61,074 (2020), the Commission explained, in reliance on *Tennessee Gas*, that "[t]o determine whether a late intervenor established good cause, the Commission considers whether the movant explains why it was unable to intervene in a timely manner" and that "good cause must be established before the other factors in Rule 214(d) will be considered." *Id*. at PP 18, 25. The Commission re-affirmed in *Venture Global CP2 LNG, LLC*, 189 F.E.R.C. ¶ 61,148 (2024), that "the *Tennessee Gas* decision . . . represents current Commission policy." *Id.* at P 14. Even though in *Venture Global* the Commission distinguished *Tennessee Gas* as only applying to certain Natural Gas Act proceedings, *id.*, that distinction does not make a difference here because the Commission relied on *Tennessee Gas* and its

progeny in the Rehearing Order at P 11 & n.27 (citing *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074, at P 18).

"It is textbook administrative law that an agency must 'provide[] a reasoned explanation for departing from precedent or treating similar situations differently,'" *W. Deptford Energy*, 766 F.3d at 20 (quoting *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995)) (alteration in original). "If the agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases." *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007) (citations omitted). "Without any explicit recognition by the Commission that the standard has been changed, or any attempt to forthrightly distinguish or outrightly reject apparently inconsistent precedent, [the court is] left with no guideposts for determining the consistency of administrative action in similar cases, or for accurately predicting future action by the Commission." *Hatch v. FERC*, 654 F.2d 825, 834–35 (D.C. Cir. 1981).

Petitioner maintains that the Commission's interpretation of Rule 214 has been "inconsistent" in three ways: (1) the Commission has not always required a showing of "good cause . . . for the late filing." (2) Relatedly, the Commission "has not consistently determined that administrative oversight will be fatal to a late intervention motion under Rule 214." (3) And the Commission "has found 'good cause' based on an evaluation of the Rule 214(d) factors" beyond good cause for filing late under (d)(1)(i). Petitioner's Br. 20–22. Petitioner's third example is, in essence, duplicative of its textual challenge to the Commission's interpretation that if (d)(1)(i) "'good cause' is not established, it need not consider the factors listed under Rule 214(d)," Petitioner's Br. 22, which the court has rejected in Part II.B, *supra*. The additional regulatory history involving the Natural Gas Policy Act advanced by the Petitioner, Petitioner's Br. 23, is not to the contrary, offering an

unremarkable observation that one of the (d)(1) factors "*may* [but does not have to] be considered when" the Commission "rules on late interventions." 49 Fed. Reg. 21,701, 21,702 (May 23, 1984). Neither are the FEDERAL RULES OF CIVIL PROCEDURE authoritative in interpreting the Commission's intervention rule. Petitioner's Br. 24. Because Petitioner raised its textual challenge to interpretation of Rule 214, the Commission's position that this argument is forfeit, Respondent's Br. 33, lacks merit.

The question remains whether the Commission has applied *Tennessee Gas* and its progeny inconsistently to similarly situated movants seeking to intervene pursuant to Rule 214. In this regard, the Commission maintains that Petitioner "identifies no conflict with Commission precedent" because four of the decisions noted by Petitioner are "distinguishable" as either post-dating the Rehearing Order, *see, e.g.*, *Valley Link Transmission Maryland, LLC*, 191 F.E.R.C. ¶ 61,113, at P 22 (2025), or as non-precedential decisions of administrative law judges, *see, e.g.*, *Basin Elec. Power Coop.*, Order Granting Late Intervention, Dkt. No. ER22-137-000 (Apr. 15, 2025) (unreported). Respondent's Br. 27–32. Further, the Commission maintains that in two cases the movants demonstrated good cause for filing late because they were not located in the United States or because they filed timely in one proceeding and only later did it become clear that intervention was necessary in a related proceeding. Respondent's Br. 29–31 (citing *Woodland Pulp, LLC*, Notice Granting Late Intervention, Project No. P-2660-038 (Aug. 22, 2024); *Erie Boulevard Hydropower, L.P.*, 188 F.E.R.C. ¶ 61,057, at P 11 (2024)). And the Commission intimates that it made "fact-specific determination[s]" to grant out-of-time intervention where the parties moved "more quickly than" Petitioner. Respondent's Br. 29–30 (citing *Woodland Pulp*).

Petitioner responds with even more cases demonstrating the Commission's inconsistent application of its late-

intervention precedent. Specifically, Petitioner points to four cases where the Commission granted out-of-time motions to intervene despite the movants' failure to specify good cause for late filing beyond administrative oversight. *See Athens Utils. Bd. v. TVA*, 177 F.E.R.C. ¶ 61,021, at P 87 (2021) (failing to consider good cause for filing late); *DTE Energy Trading, Inc.*, 182 F.E.R.C. ¶ 61,207, at P 21 (2023) (same); *Duquesne Light Co. v. PJM Interconnection, LLC*, 176 F.E.R.C. ¶ 61052, at P 13 (2021) (same); *W. Tex. LPG Pipeline Ltd. P'ship*, 162 F.E.R.C. ¶ 61,252, at P 34 (2018) (considering other (d)(1) factors despite asserted good cause based on administrative oversight). Reply Br. 21–22, 24. In these cases, the Commission departed from its precedent in *Tennessee Gas* and its progeny requiring that "good cause must be established before the other factors in Rule 214(d) will be considered," *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074, at P 25, by ignoring whether movants demonstrated good cause for filing late, and considering instead whether they met some of the other (d)(1) factors — the same factors that Petitioner urged the Commission to consider in moving to intervene. Mot. to Intervene at 3. The Commission never explained why Petitioner's out-of-time motion to intervene should be treated differently.

The inconsistency in the application of Rule 214 is no news to the Commission. Former Commissioners disagree about whether *Tennessee Gas* still applies and to whom. For example, in *Northern Natural*, 175 F.E.R.C. ¶ 61,052 (2021), predating Petitioner's motion, the Commission granted a motion to intervene filed seven months after the deadline without addressing any good cause. *Id.* at 61,341. Then-Chairman Glick "wr[o]te separately to highlight the extent to which [the] order abandons the harsh approach to late interventions in natural gas proceedings that the Commission adopted in *Tennessee Gas.*" *Id.* at 61,342. Former Commissioner Clements concurred on similar grounds. *Id.* at 61,344. Former Commissioner Danly dissented from the grant

of the motion, stating that "the Commission is still dependably inconsistent in the application of its regulations, routinely granting late interventions in natural gas rate, electric, and oil proceedings without requiring a showing of good cause, while demanding that good cause be shown in hydropower and natural gas certificate proceedings." *Id.* at 61,343. (The Commission later distinguished *Northern Natural* because the petitioners responded to a potentially large shift in Commission-wide policy not apparent at the beginning of the proceedings. *Broadview Solar, LLC*, 175 F.E.R.C. ¶ 61,228, at P 9–10 (2021)). Nowhere in *Northern Natural* or other cases cited by Petitioner does the Commission explain why it allowed these exceptions in light of its strict intervention precedent.

Moreover, decisions of the Commission's administrative law judges cited in Petitioner's opening brief as well as multiple decisions of the Commission post-dating the Rehearing Order, although not alone persuasive, are illustrative of the inconsistency in the Commission's intervention practice that apparently permeate multiple levels of its decision-making. The Commission does not address the ALJ decisions except by summarily stating that they do not "control[]." Respondent's Br. 30.

Instead, the Commission attempts to "distinguish" certain cases adduced by Petitioner because they "involve[d] much less egregious delay." Respondent's Br. 32. Perhaps, but the Commission has not shown that it has adopted an "official policy or practice regarding the length of time in between the intervention deadline and the late intervention motion," Reply Br. 21, nor was the length of delay a stated reason for denying Petitioner's intervention. "[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 50 (1983). Here, the Commission denied intervention because the "failure to establish good cause

is a sufficient condition to deny intervention and no other factors [presumably including the length of the movant's delay in filing a motion] need be examined where good cause does not exist." Rehearing Order at P 11 & n.27 (citing *Double E Pipeline*, 173 F.E.R.C. ¶ 61,074, at P 23); *id.* at P 13 (requiring a showing of whether good cause has been shown for the late filing); *see* Respondent's Br. 21. The attempt by the Commission to distinguish the cases where out-of-time motions to intervene were granted because they were filed in a shorter period of time after the deadline, without more, necessarily fails.

That is all the more true because the Commission has in subsequent cases granted intervention to parties that exceeded the intervention deadline by longer than did Petitioner, which reconfirms that the Commission has yet to adopt a strict or consistent applied cutoff time for late intervention. *See, e.g.*, *Transcont'l Gas Pipe Line Co., LLC*, 182 F.E.R.C. ¶ 61,006, at PP 11, 86 (2023), *vacated on other grounds by New Jersey Conservation Found. v. FERC*, 111 F.4th 42 (D.C. Cir. 2024) (granting motions filed over 14 months and 19 months late); *Mountain Valley Pipeline, LLC Equitrans L.P.*, 161 F.E.R.C. ¶ 61,043, at PP 21–22 (2017) (over 19 months late). Furthermore, the Commission provides an additional intervention opportunity during the comment period for an Environmental Impact Statement, which is sometimes prepared *after* an EA. *See* 18 C.F.R. §§ 157.10(a), 380.6, 380.10(a)(i). Indeed, where the Commission has addressed the length of delay in filing a motion to intervene, it has tied consideration of the passage of time to the increased burden on the Commission or the other parties, neither of which has been pressed as an objection to Petitioner's intervention. For example, in *Tennessee Gas*, the Commission imposed a stricter intervention standard after the issuance of a dispositive order "because the prejudice to other parties and the burden on the Commission of granting late intervention" at the post-decisional stage "are substantial." 162 F.E.R.C. ¶ 61,167, at

P 10; *Broadview Solar*, 174 F.E.R.C. ¶ 61,199, at P 14 (same); *see also Ampersand Christine Falls Hydro, LLC*, 194 F.E.R.C. ¶ 61,048, at P 8 (2026) (same).

And the Commission's reliance on the Ninth Circuit's decision in *California Trout*, as support for its assertion that "the Commission has steadfastly and consistently held that a person who has . . . notice that his interests might be adversely affected by a proceeding, but who fails to intervene in a timely manner, lacks good cause under Rule 214" misses Petitioner's point that the Commission has repeatedly departed from its precedent. Respondent's Br. 19 (quoting *Cal. Trout*, 572 F.3d at 1025). Furthermore, *California Trout* is factually distinguishable because it predated *Tennessee Gas,* and the Ninth Circuit thus had no occasion to consider whether the Commission's subsequent decisions on motions to intervene were inconsistent in light of it.

Our dissenting colleague concludes that the inconsistency in the Commission's decision-making is permissible "because intervention motions are inherently fact-bound, and the cases cited by [the court] are readily distinguishable." Dissent Op. 1. This misconstrues the court's holding. The inconsistency is not in outcomes, but in the legal rules adopted and as applied by the Commission in ruling on intervention motions. The court faults the Commission not for denying a motion to intervene because the motion was simply late, *see id.* at 14, but for denying the motion on the basis of a sole (and different) rule than it adopted as a matter of official agency policy – that Petitioner did not assert good cause for filing late under subsection (d)(1)(i) – while permitting other out-of-time movants to intervene without making such a showing, including with much greater delay. The Dissent also relies on rationales that the Commission never provided and that would reduce its stated intervention approach under *Tennessee Gas* to a nullity.

The main flaw underlying the dissent's reasoning is that it permits the Commission to adopt an official approach of only considering one (d)(1) factor (good cause for failure to file late under subsection (i)) and simultaneously to make a "fact-specific determination," Dissent Op. 10, that evaluates considerations beyond that single factor, such as the length of delay in filing a motion or familiarity with the Commission's proceedings. *Id.* at 6. In effect, then, the Commission would never need to consider what a would-be intervenor argues under the remaining (d)(1) factors (including critical factors such as whether the movant's interests are adequately represented and whether prejudice exists) once the putative intervenor fails to establish good cause, and the Commission's decision would nonetheless be insulated from judicial review based on some other, always-changing "fact-specific" consideration.

In the dissent's view that is permissible because "intervention motions are inherently fact-bound." Dissent Op. 1. But that logic would excuse the Commission, or any other agency, from the requirements of reasoned decision-making because every motion to intervene will be fact-bound, *i.e.*, presenting a specific set of circumstances germane to each movant. Indeed, the dissent's view would obviate the need for Rule 214(d)(1)'s statement of what factors the Commission considers in evaluating an out-of-time motion to intervene, which the Commission presumably adopted to clarify, rather than obscure, its decision-making process. Nor is it necessarily true that "the length of delay is an inextricable feature of the tardiness that the movant seeks to excuse," Dissent Op. 14, because the Commission has in the past considered the length of delay as part of its consideration of prejudice to parties, which are separate (d)(1) factors. *See, e.g.*, *Broadview Solar*, 174 F.E.R.C. ¶ 61,199, at P 14; *Ampersand*, 194 F.E.R.C. ¶ 61,048, at P 8. The point is that here the Commission purported to consider a certain set of facts – those relevant to

Petitioner's failure to timely file – while not requiring the same of other movants without an explanation.

In effect, the dissent would allow the Commission to create a moving goalpost for out-of-time intervention whereby it will almost always be able to reject a movant on the basis of a distinguishing fact, creating an appearance of favoritism and partiality incongruous with the Commission's public interest mandate. *Cf.* 16 U.S.C. §§ 797, 799. In this regard, former Chairman Glick stated that "[w]here a would-be party demonstrates good cause for intervening late [under any factor]," the Commission would "better serve the public interest by considering its views and stating on the record why we agree or disagree than by erecting procedural barriers just to keep the would-be party out of the proceeding." *Northern Natural*, 175 F.E.R.C. ¶ 61,052, at 61,342.

The dissent also cannot be reconciled with the basic tenet of administrative law that an "agency's action must be upheld, if at all, on the basis articulated by the agency itself." *State Farm*, 463 U.S. at 50. The Commission stated that Petitioner's failure to show "good cause for failing to file" timely under (d)(1)(i) was "*sufficient* to support the Commission's decision," Rehearing Order PP 14, explaining that "[t]o determine whether a late intervenor established good cause, the Commission considers any explanation by the movant of why it was unable to intervene in a timely manner." *Id.* at P 9 (emphasis added) (citation omitted); *see id.* at P 13. Missing from the Commission's explanation of what it considers to be good cause for filing late in this case are the considerations that the dissent perceives as justifying the denial of intervention, such as the length of delay or "familiarity with [the Commission's] procedures." Dissent Op. at 11.

Similarly, in addressing several instances where the Commission granted out-of-time motions to intervene, the dissent concludes with an intervention approach of its own making "that a minimal [and undefined] delay at a proceeding's

early stages, or circumstances beyond a movant's mere oversight, may justify granting late intervention." Dissent Op. 12. Although that may be a sensible approach to intervention, the Commission has not shown that it is an approach that it has adopted. To the contrary, on several occasions the Commission has granted intervention where the movants' delay in filing was much longer, without even discussing good cause. *Transcont'l Gas Pipe Line*, 182 F.E.R.C. ¶ 61,006, at PP 11, 86; *Mountain Valley Pipeline*, 161 F.E.R.C. ¶ 61,043, at PP 21–22. Moreover, the throughline in the dissent is that once a movant is too late (unclear how late), the Commission would always be justified in denying intervention, no matter how unique or important the movant's point of view is or minimal the prejudice or what the Commission's publicly stated approach to intervention is.

Nor is the dissent correct that the court's "holding unjustifiably cabins the Commission's discretion by requiring it to consider factors beyond good cause when deciding a late intervention motion." Dissent Op. at 10. Here, the Commission's own actions are its undoing — the Commission declared to have adopted a strict intervention approach in *Tennessee Gas* and *Double E Pipeline* of only considering the (d)(1)(i) factor for filing late, but acted contrary to its own purported approach in a number of other cases without a reasoned explanation. This does not mean, as the dissent maintains, that the Commission must always "consider other factors listed in Rule 214(d)(1) [] because it has done so in other cases," Dissent Op. at 10; the Commission must, however, at least explain why it is declining to do so in Petitioner's case when it has considered those factors in similar situations. Simply put, the Commission is not excused from the requirements of "[e]lementary even-handedness." *See Airmark Corp. v. FAA*, 758 F.2d 685, 692 (D.C. Cir. 1985).

It is also irrelevant that the Commission's prior departures from the *Tennessee Gas* approach were not part of "an

established practice." Dissent Op. at 10 (citing *Aliceville Hydro Assocs. v. FERC*, 800 F.2d 1147, 1152 (D.C. Cir. 1986)). The court has not required that petitioners establish deviation from an agency's self-proclaimed "current [] policy", *Venture Glob.*, 189 F.E.R.C. ¶ 61,148, at P 14, with evidence of another established practice or policy. And, of course, the Commission is "free to alter its past rulings and practices," *Hatch*, 654 F.2d at 834.

In sum, the Commission on multiple occasions has treated, without explanation, similarly-situated movants for out-of-time intervention differently by considering the remaining Rule 214(d)(1) factors irrespective of whether the sole justification for filing out of time was administrative oversight or whether the movants alleged good cause for filing out of time under (d)(1)(i) at all, exacerbated by the Commission's lack of clarity about its intervention policy. The Commission was not required to rely on *Tennessee Gas* and its progeny as "a sufficient condition to deny [Petitioner's] intervention." Rehearing Order at 11. But because it did, a "sometimes-yes, sometimes-no, sometimes-maybe policy of [deadlines] cannot . . . be squared with [the court's] obligation to preclude arbitrary and capricious management of [the Commission's] mandate." *NLRB v. Wash. Star Co.*, 732 F.2d 974, 977 (D.C. Cir. 1984).

The Commission does not suggest that any error is harmless or that a remand would be futile because it would deny Petitioner intervention under the remaining Rule 214(d)(1) factors. *See PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). The Commission identified no opposition to Petitioner's motion to intervene, or disruption to its proceedings, or burden to the Commission or the other parties resulting from granting Petitioner's motion. Absent the grant of its motion, Petitioner, on the other hand, lacks "party" status to move for reopening or judicial review of the Surrender Order. *See* 16 U.S.C. § 825*l*(b).

Accordingly, the court vacates the challenged orders and remands the case for the Commission to reconsider the motion to intervene and provide a reasoned explanation for its determination consistent with its precedent.

PAN, *Circuit Judge*, concurring in part and dissenting in part:

I concur in the court's holding that American Whitewater has standing to challenge the Federal Energy Regulatory Commission's orders denying intervention, and that the Commission's approval of the surrender application does not moot this case. *See* Maj. Op. Part II.A. I also concur in the court's holding that a lack of "good cause" for an untimely motion to intervene may, in itself, justify denial of the motion. *See id.* Part II.B (interpreting 18 C.F.R. § 385.214(b)(3), (d)(1)). But I respectfully dissent from the court's holding that FERC's denial of American Whitewater's intervention motion in this case was arbitrary and capricious. *See id.* Part II.C.

\*   \*   \*

American Whitewater moved to intervene in a proceeding before the Commission nearly nine months after the deadline to intervene had passed. American Whitewater's only explanation for its tardiness was that it was unaware of the proceeding, despite the Commission's publication of two notices about the proceeding in the *Federal Register*. The Commission exercised its discretion to deny the motion to intervene, finding that American Whitewater had not shown "good cause for failing to file the motion within the time prescribed." 18 C.F.R. § 385.214(d)(1)(i).

My colleagues hold that the Commission's decision was arbitrary and capricious. Although FERC's denial of the motion was clearly explained, reasonable, and consistent with the Commission's announced policy of being "less lenient in the grant of late interventions," my colleagues hold that FERC arbitrarily denied intervention here because it has allowed parties in other cases to intervene under similar circumstances. Maj. Op. 16. That holding is erroneous because intervention motions are inherently fact-bound, and the cases cited by my colleagues are readily distinguishable. And by reversing the

2

Commission in a case where it followed its policy of strictly applying the good-cause standard, my colleagues appear to make it impossible for the Commission to adhere to that policy in the future: The court's opinion seems to proclaim that it is (and always will be) arbitrary and capricious for the Commission to deny a late-filed motion to intervene based solely on a determination that the moving party has failed to demonstrate good cause for its delay in filing.

I cannot agree with my colleagues' holding that the Commission may not exercise its discretion to deny a nine-months-late motion when the movant's only excuse for its lateness was that it was unaware of a publicly noticed proceeding. Nor can I agree with the majority's apparent holding that the Commission cannot consider how long the movant waited to file its motion when deciding whether there is "good cause" to excuse the late filing. Maj. Op. 21. And most importantly, I disagree with the court's apparent holding that the Commission can never deny late intervention based solely on the moving party's unjustified and extreme dilatoriness. That is an undue constraint on the Commission's broad discretion to manage its proceedings. I would affirm the Commission's orders and therefore respectfully dissent.

## I.

### A.

The Federal Power Act (FPA) charges FERC with regulating hydropower licensing. 16 U.S.C. § 817(1). A licensee seeking to surrender its license must apply to FERC for approval. FERC must publish notice of the license-surrender proceeding — typically in the *Federal Register* — and must set deadlines for comments, protests, and motions to intervene. *Id.* § 799; 18 C.F.R. §§ 385.2009, 385.210(b).

3

The FPA also authorizes FERC to promulgate regulations governing how an interested entity may intervene and become a "party" in an administrative proceeding. 16 U.S.C. § 825g(a). The relevant regulation here is Rule 214. 18 C.F.R. § 385.214. Paragraph (b) of Rule 214 requires a movant to state its position and explain its interest in the proceeding's outcome. *Id.* § 385.214(b)(1)–(2). And if the motion to intervene is untimely, the movant must "show good cause [for] why the time limitation should be waived." *Id.* § 385.214(b)(3). In determining whether the movant has made that showing, the Commission "may" consider several factors, including whether:

> (i) the movant had good cause for failing to file the motion within the time prescribed;

> (ii) any disruption of the proceeding might result from permitting intervention;

> (iii) the movant's interest is not adequately represented by other parties in the proceeding;

> (iv) any prejudice to, or additional burdens upon, the existing parties might result from permitting the intervention; and

> (v) the motion conforms to the requirements of paragraph (b) of this section.

*Id.* § 385.214(d)(1).

## B.

In 2023, Sho-Me Power Electric Cooperative (Sho-Me) applied to surrender its license for the Niangua Hydroelectric

Project and stated its intent to leave the Project's facilities, including its dam, in place.

In early August 2023, FERC published notice of Sho-Me's surrender application and set August 31, 2023, as the deadline for non-parties to intervene in the surrender proceeding. *Sho-Me Power Elec. Coop.*, 88 Fed. Reg. 52153 (Aug. 7, 2023). Seven months later, in March 2024, FERC published a notice of intent to prepare an environmental assessment (EA) of Sho-Me's license surrender. 89 Fed. Reg. 21510 (Mar. 28, 2024). Notably, the notice of intent referenced the earlier publication that announced the intervention procedures and deadline. *See id.* ("A Notice of Application Accepted for Filing and Soliciting Comments, Motions to Intervene, and Protest was issued on August 1, 2023."). Thus, the Commission made not one but *two* public announcements about the surrender proceeding.

American Whitewater moved to intervene in the surrender proceeding in May 2024 — nearly nine months after the intervention deadline and two months after publication of the EA notice. American Whitewater sought intervention to advocate for the removal of the Project's dam because, the organization claimed, the dam impairs recreational use of the Niangua River. To establish "good cause" for its failure to timely intervene, American Whitewater asserted that the "organization only recently became aware of this proceeding and was unaware that the deadline for intervention had passed." J.A. 28. American Whitewater also argued that the parties in the surrender proceeding could not adequately represent the organization's recreational interests, and that its intervention would not prejudice the parties or disrupt the proceeding.

FERC denied American Whitewater's untimely motion to intervene, finding that the organization had "failed to

demonstrate good cause for its inability to intervene in a timely manner." J.A. 214.

American Whitewater sought rehearing and argued, in relevant part, that FERC had "departed [from] its own precedent" by denying the intervention motion based solely on the absence of good cause. J.A. 225. In support of its argument, American Whitewater cited prior decisions in which the Commission "granted late intervention to parties who did not have a strong basis under Rule 214(d)'s [good-cause] factor." J.A. 222 (collecting FERC decisions). Based on that asserted prior practice, American Whitewater argued that the Commission could not deny its motion solely for failure to establish good cause under Rule 214(d)(1)(i), and that the remaining Rule 214(d)(1) factors warranted granting its motion.

The Commission denied the rehearing request and elaborated on its reasoning for denying the untimely intervention motion. *Sho-Me Power Elec. Coop.*, 190 FERC ¶ 61,028 (2025) (Rehearing Order).

The Commission grounded its analysis in *Tennessee Gas Pipeline Co.*, 162 FERC ¶ 61,167 (2018) — its seminal decision governing the agency's late-intervention policy. Rehearing Order at P 11 n.29. In *Tennessee Gas*, FERC observed a "pattern" of movants failing to address Rule 214's "requirements for late interventions" and announced that "going forward," it would "be less lenient in the grant of late interventions." 162 FERC ¶ 61,167, at P 50. Late intervenors are "required to show good cause why the time limitation should be waived" under Rule 214(b)(3) "by reference to factors set forth in Rule 214(d)." *Id.* (cleaned up). Those requirements ensure that late intervenors "explain why they should not be held to the Commission's expectation that

entities should intervene 'in a timely manner based on reasonably foreseeable issues arising from the applicant's filing and the Commission's notice of the proceeding.'" *Id.* at P 51 (quoting *Alcoa Power Generating, Inc.*, 144 FERC ¶ 61,218, at P 13 (2013), *aff'd sub nom.*, *New Energy Cap. Partners v. FERC*, 671 F. App'x 802 (D.C. Cir. 2016)).

Applying *Tennessee Gas*, the Commission found unpersuasive American Whitewater's assertion that it met the good-cause standard because it "was not aware of the proceeding until after the deadline to intervene passed." Rehearing Order at P 10. The Commission emphasized that it had published two notices about the surrender proceeding, and under its precedent, publication in the *Federal Register* provided American Whitewater with constructive notice of the proceeding. *Id.* & n.22 (citing *San Diego Gas & Elec. Co.*, 112 FERC ¶ 61,330 (2005)). American Whitewater nevertheless waited to intervene until "over nine months after the initial notice and over two months after the notice of intent." *Id.* at P 10. The Commission also noted that American Whitewater "has long been involved in Commission proceedings and thus is familiar with the notice and intervention process and requirements." *Id.*; *see also* J.A. 26 (American Whitewater acknowledging that it "has long been involved with [FERC-licensed] hydropower projects").

Under the circumstances presented, the Commission concluded that American Whitewater's "[l]ack of awareness of a publicly-noticed proceeding, without more, d[id] not constitute good cause." Rehearing Order at P 10. That conclusion was consistent with precedents before and after *Tennessee Gas*, which "ha[ve] steadfastly and consistently held that a person who has actual or constructive notice that his interests might be adversely affected by a proceeding, but who fails to intervene in a timely manner, lacks good cause under

Rule 214." *Id.* at P 9 (quoting *Cal. Trout v. FERC*, 572 F.3d 1003, 1022 (9th Cir. 2009)); *see also Transcon. Gas Pipe Line Co.*, 172 FERC ¶ 61,281, at P 6 n.13 (2020) ("[T]he Commission has not accepted administrative oversight as a valid reason for an untimely motion to intervene."); *PJM Interconnection, LLC Appalachian Power Co.*, 169 FERC ¶ 63,031, at P 18 (2019) ("Administrative oversight as the reason that [the movants] failed to timely intervene is insufficient." (cleaned up)).

Having found no good cause, the Commission declined to consider the remaining Rule 214(d)(1) factors because "failure to establish good cause is a sufficient condition to deny intervention and no other factors need be examined where good cause does not exist." Rehearing Order at P 11; *see also Double E Pipeline*, 173 FERC ¶ 61,074, at P 23 (2020) ("When it has been determined that good cause does not exist, the Commission is not obligated to consider . . . Rule 214's remaining factors.").

The Commission also rejected American Whitewater's argument that its prior decisions granting intervention compelled a different result. As the Commission explained, each decision turned on case-specific facts, and its consideration of "certain Rule 214 factors in one case" does not "bind the Commission to apply those same factors [in] every case." Rehearing Order at PP 12–13. The Commission thus denied the rehearing request and affirmed its denial of American Whitewater's motion to intervene. *Id.* at P 15.

On petition for review, American Whitewater argues that the Commission misinterpreted the plain text of Rule 214 when it determined that the absence of "good cause" for an untimely filing is, in itself, a sufficient basis to deny intervention. According to American Whitewater, the text of Rule 214(b)(3)

requires a movant to show "good cause [for] why the time limitation should be waived," 18 C.F.R. § 385.214(b)(3), and the Commission may not rely solely on the single factor in subsection (d)(1)(i) to determine whether a movant has satisfied that requirement, Pet. Br. 17. I fully concur with the court's rejection of that argument. The court holds in Part II.B of its opinion that the Commission may exercise its discretion to deny late intervention when the movant has not demonstrated "good cause for failing to file the motion within the time prescribed," without considering any other Rule 214(d)(1) factors. Maj. Op. 14 (interpreting Rule 214(b)(3), (d)(1)).

But the court does not stop there. The court goes on to vacate the Commission's orders for doing exactly what the Rule permits it to do: The majority holds that in this case, when the Commission denied the intervention motion based on American Whitewater's failure to show "good cause" for its late filing, the Commission's action was arbitrary and capricious — even though the Commission correctly applied Rule 214 and complied with the late-intervention policies that it announced in *Tennessee Gas* and *Double E Pipeline*. Maj. Op. 16–26. I respectfully disagree with my colleagues' analysis in Part II.C of the court's opinion.

## II.

A bedrock principle of administrative law requires a government agency to "provide a reasoned explanation for departing from precedent or treating similar situations differently." *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 20 (D.C. Cir. 2014) (cleaned up). An agency, however, "does not act arbitrarily" when its action comports with precedent and "it treats dissimilar parties differently." *Intellistop Inc. v. U.S. Dep't of Transp.*, 72 F.4th 344, 351 (D.C. Cir. 2023) (per

curiam); *see also Grayscale Invs., LLC v. SEC*, 82 F.4th 1239, 1245 (D.C. Cir. 2023) (explaining that an agency "must justify different results reached on similar facts"). A petitioner who claims to be a victim of arbitrary, disparate treatment by an agency must "bring before the reviewing court sufficient particulars of how the [petitioner] was situated, how the allegedly favored party was situated, and how such similarities as may exist dictate similar treatment and how such dissimilarities as may exist are irrelevant or outweighed." *P.I.A. Mich. City Inc. v. Thompson*, 292 F.3d 820, 826 (D.C. Cir. 2002); *see also Lomak Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1198 (D.C. Cir. 2000) (rejecting an arbitrary-and-capricious claim because the petitioner "failed to establish convincing inconsistencies between FERC's treatment of" its facility "and other facilities").

Relatedly, if an agency "announces and follows — by rule or by settled course of adjudication — a general policy by which its exercise of discretion will be governed," it may be bound to that policy in future cases. *INS v. Yang*, 519 U.S. 26, 32 (1996). And when an agency departs from an existing policy, it must "provide a reasoned explanation." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 568 (2025) (cleaned up) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)).

## III.

My colleagues in the majority hold that FERC departed from precedent and treated American Whitewater differently from other late-filing intervenors when it denied the instant motion to intervene. According to my colleagues, FERC has previously granted late intervention motions "by considering the remaining Rule 214(d)(1) factors irrespective of whether the sole justification for filing out of time was administrative

oversight or whether the movants alleged good cause for filing out of time under (d)(1)(i) at all." Maj. Op. 26. My colleagues also fault the Commission for relying on American Whitewater's nine-month delay in filing its intervention motion, noting that the Commission has not "adopted an 'official policy or practice regarding the length of time in between the intervention deadline and the late intervention motion.'" *Id.* at 21 (quoting Reply Br. 21). And although the Commission in this case followed its publicly announced policy of strictly enforcing the good-cause standard, my colleagues vacate the Commission's order because they perceive that the Commission has not adhered to that policy in other cases that are not before the court. *See id.* at 22 (holding that "the Commission has repeatedly departed from its precedent" that the absence of good cause is a sufficient basis to deny late intervention).

In my view, the majority's holding unjustifiably cabins the Commission's discretion by requiring it to consider factors beyond good cause when deciding a late intervention motion. The court appears to insist that the Commission consider other factors listed in Rule 214(d)(1) here because it has done so in other cases. But the Commission's prior decisions granting late intervention do not define "an established practice" binding the Commission to decide every intervention motion based on factors beyond good cause. *Aliceville Hydro Assocs. v. FERC*, 800 F.2d 1147, 1152 (D.C. Cir. 1986). Instead, the "Commission makes a fact-specific determination" on each late intervention motion, Rehearing Order at P 13, and when it exercises its broad discretion to grant or deny an intervention motion, it does not — and need not — always apply the Rule 214(d)(1) factors in the same way, *see Aliceville Hydro Assocs.*, 800 F.2d at 1152 (rejecting an argument that FERC's prior acceptances of untimely permit applications amounted to a binding policy, where the "practice was not repeated enough

times, or over a long enough period, or at a high enough level for it to become binding on the Commission"). When a rule or regulation lists several factors that an agency "may" consider in making a discretionary decision (like Rule 214 does), the agency does not act arbitrarily when it relies on different listed factors in cases that present distinct facts. *See* Maj. Op. 15 ("Nothing in the text or regulatory history of Rule 214 requires the Commission to consider any or all of the (d)(1) factors."); *see also Cal. Trout*, 572 F.3d at 1025–26 ("Where, as here, the agency's rule gives it the discretion either to consider or to ignore certain factors, we would be remiss to eliminate this discretion by requiring the agency to *always* [consider or] ignore certain factors just because it has often" done so "in the past." (emphasis in original) (cleaned up)).

In sum, this is not a case where the Commission must either conform to a prior practice of granting late intervention without regard to the good-cause factor, or explain its failure to do so. Instead, it is a case where the Commission permissibly exercised its discretion to decide a motion based on the particular facts before it, and did so in accordance with an announced policy.

Although the court's opinion is premised on a finding of inconsistent treatment of similarly situated parties, my colleagues fail to identify any prior successful intervenor that was similarly situated to American Whitewater in the ways that are relevant: None of the decisions cited by the majority (or by American Whitewater) involved an intervenor who — despite having constructive notice of the proceeding and familiarity with FERC's procedures — filed its motion nine months late and offered administrative oversight as the sole basis to excuse its significant delay. Rather, the decisions cited by the majority involved much shorter delays or other circumstances that justified granting intervention despite a longer delay.

In *Athens Utilities Board v. TVA*, for example, FERC granted a motion to intervene filed only two weeks late because intervention posed little risk of disrupting the proceeding at its early stage. 177 FERC ¶ 61,021, at PP 34–35, 87 (2021); *see also DTE Energy Trading, Inc.*, 182 FERC ¶ 61,207, at PP 11, 21 (2023) (same, where the movants filed sixteen days late); *Duquesne Light Co. v. PJM Interconnection, LLC*, 176 FERC ¶ 61,052, at PP 9, 11, 13 (2021) (same, where the movant filed eighteen days late and "the scope and potential impact of this proceeding were not evident to [the movant] at the time that the Complaint was filed"). And in *West Texas LPG Pipeline L.P.*, FERC concluded that the proposed intervenor's "administrative oversight [was] not the most convincing of reasons to allow late intervention." 162 FERC ¶ 61,252, at P 34 (2018). But FERC nonetheless granted intervention, reasoning that the motion was filed "only a few days" late, and Hurricane Harvey had "impact[ed] . . . personnel in the Houston area." *Id.*

The throughline of those decisions is that a minimal delay at a proceeding's early stages, or circumstances beyond a movant's mere oversight, may justify granting late intervention. The cited cases are materially different from this one. Here, a sophisticated participant with constructive notice of the proceeding waited nine months to intervene and attributed its delay solely to administrative oversight. Thus, the Commission's denial of intervention here does not demonstrate disparate treatment of similarly situated intervenors.[1]

---

[1] Other cases cited by American Whitewater are just as far afield. In *Woodland Pulp*, FERC granted a Canadian Tribe's motion to intervene filed one month after the deadline and before publication of a notice of intent to prepare an EA. Notice Granting Late Intervention, Project No. P-2660-038 (Aug. 22, 2024) (unreported). The Commission explained that, unlike here, the agency "had

13

I also respectfully disagree with my colleagues' apparent holding that the length of delay was not a pertinent factor in the Commission's denial of American Whitewater's motion. Maj. Op. 21. Here, the Commission reasonably determined that American Whitewater lacked good cause to excuse its "fail[ure] to file [its] motion until nine months after the deadline." Rehearing Order at P 14. In distinguishing a prior decision that granted late intervention, the Commission emphasized that "American Whitewater moved to intervene considerably later" than a movant who had "less access to U.S. information" and had "never previously appeared in a

reached out only to United States Tribes," and the movant Canadian Tribe had "less access to U.S. information" and had never participated in FERC proceedings. Rehearing Order at P 13 n.37. Nor does *Erie Boulevard Hydropower, L.P.* assist American Whitewater. 188 FERC ¶ 61,057 (2024). In *Erie*, FERC found good cause to grant a motion filed eleven months late because the agency's two interrelated proceedings led the movant to intervene in one proceeding while mistakenly failing to do so in the other. *See id.* at P 11 ("The possible interrelated nature of the two relicensing proceedings, which may not have been entirely clear early on, provides good cause for the late intervention.").

I am also unpersuaded by the majority's reliance on *Northern Natural Gas Co.*, 175 FERC ¶ 61,052 (2021), where the Commission summarily granted a seven-month-late motion to intervene, without discussing good cause. As the Commission later explained, good cause existed in that case because the movant sought to respond to the agency's unexpected plan to "change [an] industry-wide policy." *Broadview Solar, LLC*, 175 FERC ¶ 61,228, at P 10 (2021) (discussing *Northern Natural Gas*); *see also N. Nat. Gas*, 175 FERC ¶ 61,052, at P 1 (Glick, Chairman, concurring) (noting that FERC's "significant policy change" prompted late intervention). Importantly, the Commission did not announce this unexpected policy change until months after the intervention deadline, so the movant had no reason to intervene before then.

Commission proceeding." *Id.* at P 13 n.37; *see also* Resp. Br. 32 (distinguishing prior decisions granting intervention that "involve[d] much less egregious delay").

But the majority reasons that, because the Commission has not "adopted an 'official policy or practice'" concerning length of delay, it could not rely on the fact that American Whitewater's intervention motion was nine months late. Maj. Op. 21 (quoting Reply Br. 21). In my view, any motion that seeks to excuse a late filing necessarily puts the extent of the lateness before the adjudicator — the length of delay is an inextricable feature of the tardiness that the movant seeks to excuse. Thus, an agency need not announce an "official policy" to consider the length of delay when ruling on whether there is "good cause for failing to file the motion within the time prescribed." 18 C.F.R. § 385.214(d)(1)(i). It was plainly appropriate and permissible for the Commission to consider how long American Whitewater waited to file its motion to intervene when evaluating good cause for the delay.

Notably, in decisions pre- and post-*Tennessee Gas*, the Commission has often treated the length of delay as a relevant fact in its good-cause analysis. *See Double E Pipeline*, 173 FERC ¶ 61,074, at P 19 (finding no good cause where the movant filed "seven months" late); *see also Basin Elec. Power Coop.*, Order of Chief Judge Denying Motion to Intervene Out-of-Time, Dkt. No. ER20-2441-000, at P 20 (Mar. 19, 2021) (unreported) (rejecting administrative oversight as good cause for a seven-month delay, while noting that the Commission had granted intervention to a movant who also claimed administrative oversight but filed only a day late); *Pub. Util. Dist. No. 1 of Snohomish Cnty.*, Notice Denying Motion to Intervene, Project No. 12690-005 (Sep. 16, 2013) (unreported) (denying a "motion for late intervention [filed] nearly 15 months after the deadline lapsed," where FERC "published

notice in the Federal Register" and the movant's "administrative oversight" did not establish good cause).[2] It is unclear why my colleagues do not view those prior cases as establishing a practice of considering the length of delay when deciding a late intervention motion, even as they apparently infer that the Commission has adopted a practice of not considering good cause for delay at all. *See* Maj. Op. 21.

My colleagues have chosen the wrong case to address their perception that the Commission has inconsistently decided late intervention motions. This is a case where the Commission complied with the policies that it announced in *Tennessee Gas* and *Double E Pipeline* — *i.e.*, that it would "be less lenient in the grant of late interventions," *Tenn. Gas*, 162 FERC ¶ 61,167,

---

[2] The majority cites additional decisions in which FERC granted late intervention motions filed by parties whose delays exceeded American Whitewater's. *See* Maj. Op. 21–22 (citing *Transcon. Gas Pipe Line Co.*, 182 FERC ¶ 61,006, at PP 11, 86 (2023), *vacated on other grounds by N.J. Conservation Found. v. FERC*, 111 F.4th 42 (D.C. Cir. 2024), and *Mountain Valley Pipeline, LLC Equitrans L.P.*, 161 FERC ¶ 61,043 (2017)). American Whitewater failed to cite those decisions to the Commission or to this court in its opening brief, and they are nevertheless inapposite. In *Transcontinental Gas*, the movant asserted that good cause existed because, as a "small volunteer-based organization" without "any lawyers," it "did not know about the requirements of becoming a party" in FERC proceedings. Intervenor's Motion at 2, *Transcon. Gas*, Dkt. No. CP21-94-000 (Nov. 18, 2022); *see also* Oral Arg. 39:30–40:44 (Commission's counsel describing the movant's basis for good cause in *Transcontinental Gas*). Moreover, *Mountain Valley Pipeline* predates *Tennessee Gas* and therefore does not support the majority's conclusion that the Commission has "departed from its precedent in *Tennessee Gas* and its progeny." Maj. Op. 19. Indeed, when FERC announced its current late-intervention policy in *Tennessee Gas*, it cited *Mountain Valley* as an example of the very "pattern" that it resolved to abandon. 162 FERC ¶ 61,167, at P 50 & n.116.

at P 50, and that when "good cause does not exist, the Commission is not obligated to consider . . . Rule 214's remaining factors," *Double E Pipeline*, 173 FERC ¶ 61,074, at P 23. If the court believes that the Commission has not consistently adhered to those strict policies about late intervention, the court should reverse the Commission in a case where the agency has violated its policies, not where it has followed them. By vacating the Commission's decision here, and thereby holding that the Commission's compliance with the good-cause policies was arbitrary and capricious, the court appears to make it impossible for the Commission to abide by those policies in the future. From now on, the Commission will be required to abandon the good-cause policies that it has publicly announced and will instead be forced to adopt an opposite policy: It *must not* treat lack of "good cause" as a sufficient basis to deny intervention, and instead it *must* provide reasons beyond good cause to explain any denial of a late motion to intervene. The court's opinion thus interferes with the Commission's ability to manage its proceedings and impinges on the Commission's policy-making prerogative.

My colleagues' response to this dissenting opinion reveals the problems with their reasoning. Maj. Op. 23–26. They identify and seek to enforce perceived "legal rules" that constrain the Commission's broad discretion in considering late-filed intervention motions. *Id.* at 23 ("The inconsistency is . . . in the legal rules applied by the Commission in ruling on intervention motions."). In fact, the only rule that we are interpreting — Rule 214 — is entirely permissive: It merely states that the Commission "may" take into account various considerations in deciding whether to allow late intervention, and we all agree that "[n]othing in the text or regulatory history of Rule 214 requires the Commission to consider any or all of [those] (d)(1) factors," Maj. Op. 15 (citing 18 C.F.R. § 385.214(d)(1)). Thus, when the Commission exercises its

discretion under Rule 214, it surely is entitled to consider different factors under subsection (d)(1) in different cases. *See Ampersand Christine Falls Hydro, LLC*, 194 FERC ¶ 61,048, at P 8 (2026) ("Good cause is not defined in the Commission's regulations, [and] it is instead informed by the Commission's precedent on a case-by-case basis."). The only constraint on FERC's discretion in this regard is that it may not act in a manner that is arbitrary and capricious or contrary to law. 5 U.S.C. § 706(2)(A). That deferential standard is especially appropriate here because American Whitewater has no entitlement to intervene under the present circumstances — the organization is behind the eight ball because it slept "on its rights" and missed its opportunity to intervene as of right by filing a timely motion. *Millennium Pipeline Co., LLC*, 161 FERC ¶ 61,136 (2017); *see* 18 C.F.R. § 385.214(c)(1) (automatically allowing intervention when a non-party files a timely, unopposed motion).

In declaring that FERC's decision in this case was arbitrary and capricious, my colleagues rely solely on their view that the Commission has treated similarly situated parties inconsistently. *See generally* Maj. Op. Section II.C. But as discussed, *supra*, the other cases they identify are not similar in the ways that matter. Contrary to my colleagues' assertion, *id.* at 25, the Commission clearly explained the considerations that caused it to reject American Whitewater's late motion: It noted that American Whitewater had constructive notice of the proceedings but waited "over nine months after the initial notice and over two months after the notice of intent" to move to intervene, and that American Whitewater "has long been involved in Commission proceedings and thus is familiar with the notice and intervention process and requirements." Rehearing Order at P 10. To support their holding that the Commission's reasoning was arbitrary and capricious, my colleagues should point to cases where similarly experienced

parties successfully intervened despite waiting many months before requesting intervention, while citing only administrative oversight to excuse their tardiness — but my colleagues do not discuss any cases like that.[3]

Instead, my colleagues mistakenly assert that the Commission has "adopt[ed] an official approach of only considering one (d)(1) factor (good cause for failure to file late under subsection (i))" and has often violated that policy in other cases. Maj. Op. 23. In fact, the Commission has merely determined that a failure to show good cause is *sufficient* to justify denying late intervention — it has not bound itself to *always* consider just the good-cause factor in every case. *See* Rehearing Order at P 11 ("[F]ailure to establish good cause is a sufficient condition to deny intervention and no other factors need be examined where good cause does not exist."). Thus, contrary to my colleagues' belief, Maj. Op. 24, the Commission does not act arbitrarily when it chooses to consider other (d)(1) factors in dissimilar cases while declining to do the same thing here.

---

[3]    My colleagues also err in stating that "the length of delay in filing a motion or familiarity with the Commission's proceedings" are considerations that go "beyond" the good-cause factor. Maj. Op. 23. The Commission took those considerations into account while performing its good-cause analysis — it did not treat them as additional, stand-alone factors. *See* Rehearing Order at P 14 ("The lack of good cause for failing to file the motion until *nine months after the deadline* supported a lack of good cause to waive the time limitation." (emphasis added)); *id.* at P 13 n.37 (distinguishing a prior decision granting intervention because "American Whitewater moved to intervene considerably later" than the prior movant who had "less access to U.S. information" and had "never previously appeared in a Commission proceeding").

Where, as here, the Commission has a reasonable basis for its decision, expresses it clearly, and does not treat similarly situated movants differently, it lawfully exercises its broad discretion. But my colleagues imagine a "rule" that does not exist and require the Commission to either comply with that "rule" or explain, in every case, why it fails to do so. It appears that the court's holding will add a step for the Commission to follow in every late-intervention case: The Commission will have to consider whether its intended decision on each motion differs from what the court considers a "rule," and then either abide by the court's "rule" or provide a justification for its action.

\* \* \*

In my view, the Commission properly exercised its discretion to deny American Whitewater's late-filed motion to intervene, finding that the organization's administrative oversight of the intervention deadline failed to establish good cause for its nine-month delay. *See* 18 C.F.R. § 385.214(d)(1)(i). FERC's prior decisions granting late intervention based on other Rule 214(d)(1) factors under materially different circumstances do not compel the Commission to grant the instant motion or to provide further explanation for its decision in this case.

The majority's contrary holding appears to convert the Commission's broad discretion to grant or deny intervention motions into an obligation to overlook a movant's failure to establish good cause for delay, or to at least provide reasoning beyond the good-cause finding. By reversing the Commission in this case, the court appears to preclude the Commission from ever relying solely on a failure to show good cause when denying a motion to intervene. That result is at odds with the court's holding in Part II.B of its opinion that Rule 214 permits

FERC to rely on the good-cause factor alone to deny a late motion. Maj. Op. 14–16. Even more importantly, the court's holding forces the Commission to abandon its stated policies of strictly enforcing intervention deadlines and treating a movant's failure to show good cause as a sufficient basis to deny late intervention. Instead, the court appears to impose a contrary policy that requires the Commission to *always* consider factors other than good cause when exercising its discretion to grant or deny late intervention motions. I find that outcome untenable.

Because I disagree with the court's conclusion that the Commission's denial of American Whitewater's intervention motion was arbitrary and capricious, I respectfully dissent from Part II.C of the court's opinion.